**HEMPHILL COUNTY, Texas, Appellant,**

v.

**Walter ADAMS and Harry Rathjen, Appellees.**

**No. 7613.**

Court of Civil Appeals of Texas.

Amarillo.

May 23, 1966.

Rehearing Denied Sept. 6, 1966.

J. D. Crow, Canadian, for appellant.

Allen & Allen, Perryton, Lane. & Douglass, Pampa, for appellees.

CHAPMAN, Justice.

This is an appeal styled by the brief of appellant as Hemphill County, Texas, Appellant v. Walter Adams and Harry Rathjen, Appellees, from a judgment of the 31st Judicial District Court of Hemphill County. However, in the Statement of the Nature of the Case the county attorney for Hemphill County, appearing as attorney for the named appellant, relates that during the first appeal [1] the plaintiff amended its cause of action and joined the surety upon the defendants' bond as a party to the suit. Lawyers Surety Corporation has filed its answer, its motion for summary judgment, and its reply to appellant's brief.

We make the above explanatory statement for the reason that the county judge testified herein that neither he nor the commissioners court had ever made any claim against Mr. Rathjen for the proceeds of two jeeps alleged in appellant's pleadings to have been converted by the former sheriff of Hemphill County at a time subsequent to his resignation as sheriff; that the county never put any money in them; and so far as they were concerned they were not converted or stolen by Mr. Rathjen. Of course, this statement does not alter the fact that titles to the jeeps were in Hemphill County and were not transferred out by the commissioners court. The former sheriff resigned about July 3 or 4, 1961, to accept appointment as postmaster of Canadian, Texas. One of the jeeps was sold on November 2, 1961, and one on November 8, 1961.

On February 9, 1959, Hemphill County established a Civil Defense unit and appellee Harry Rathjen, then its sheriff, was appointed director. Acquisition of various types of property was made by Mr. Rathjen from Texas Surplus Property Agency of Lubbock. The director paid his own funds to the Lubbock Agency out of his individual bank account for the handling charges incident to such acquisition. Hemphill County commissioners requisitioned through Rathjen certain items for var-

1. Hemphill County v. Adams, Tex.Civ.App., 390 S.W.2d 546, reversing a summary judgment for the reason "that material issues of fact exist on the elements of conversion."

ious precincts and the director was reimbursed by the county. Among the many items acquired by the Civil Defense unit through its director, Rathjen, were two jeeps. The machines were not operational and he expended approximately $1,105.52 to place them in working order, paying for such repairs out of his personal bank account. A witness for the Texas Surplus Property Agency testified the county was at liberty to do as they pleased with the property after two years.

The stated reasons for the acquisition of the jeeps were for disasters such as tornadoes and prairie fires. However, ranchers of the county during the interim purchased a four-wheel drive heavy-duty pickup. The county-owned two-way radio was installed therein rather than in one of the jeeps as Rathjen had intended. The jeeps then became of no value so far as the original intended purpose relating to their acquisition, were never used for such purposes, and were rarely used for any purpose during the time Rathjen was sheriff and director of the Civil Defense unit of the county. The testimony shows that at or about the time he was appointed postmaster he offered the jeeps to the county for the amount he had expended on them and the county was not interested. As above stated he later sold them, receiving less money for them than he had expended in order to make them operational. Suit was filed by the county attorney on behalf of Hemphill County for the $1,050.00 the jeeps were sold for, alleging conversion of that amount by Rathjen and Walter Adams, his successor as sheriff. Adams had transferred titles out of the county.

After a day and a half of testimony the trial court held, inter alia, that the suit was barred by the two-year statute of limitation and dismissed the case. More than two years after the sale of the jeeps the original suit was filed against Rathjen and Adams. Then before the period of four years had elapsed the bonding company was joined as a party defendant. The principal questions to be decided are whether any limitation runs against the county, and if so, whether the two-year or four-year statutes of limitation are applicable. Appellant contends that limitation does not run for the reason that Hemphill County was operating in a governmental capacity as an agency of the state " * * * and no limitation will ever run as to the same." This question has given us no end of trouble in an effort to resolve the issue, and much confusion on the subject is shown in the myriad of cases we have studied.

The case cited by appellant for its contention that " * * * no limitation will ever run as to the same," (referring to its cause of action asserted) is Miller v. El Paso County, 136 Tex. 370, 150 S.W.2d 1000. The statement relied on in the case is pure dictum and most unusual for the learned writer whose many opinions are so clear and concise. The late Chief Justice who authored the opinion prefaced the statement, obviously relied on by appellant in Syl. 6, by saying that the statements he had already made " * * * renders it unnecessary for us to pass on the other assignments raised in the briefs." He then called attention to a case relied on by defendants in error, merely stating that such case, " * * * *dealt with* a homerule city and not a county, and that a city may exercise proprietary functions, while a county, as a mere subdivision of the State, can exercise only governmental functions." (Emphasis added). Actually, the case he referred to, Davis v. City of Taylor, 123 Tex. 39, 67 S.W.2d 1033, nowhere held that: "[A] county, as a mere subdivision of the State, can exercise only governmental functions." No county was even involved in the case. It is not completely clear if the quote had reference to a legal question being dealt with in the case referred to or if the writer was making the statement that " * * * a county, as a mere subdivision of the State, can exercise only governmental functions." Regardless of the interpretation placed upon it in this connection, it is still dictum.

The theory advocated in some opinions of our courts, unnecessary to cite, originated with the maxim—"Nullum tempus occurrit regi"—that time does not run against the sovereignty; and that a county being an integral part of the state government would not be subject to the bar of statutes of limitations. The Supreme Court of Texas in one of its early opinions[2] suggested that the maxim, acknowledged to be in use at that time in the English courts " * * * amounts to nothing more than that the statute of limitations of that country *does not run against the crown.*" The court then held " * * * that in actions brought by the state, other than those for land, the statute of limitations will form a bar to the action."

Then in an opinion announced by the Commission of Appeals and adopted by the Supreme Court on June 6, 1884, the court in Houston & T. C. Ry. Co. v. Travis County, 62 Tex. 16, where Travis County had sued the railway company for damages for the manner in which the company had constructed its railway crossing over a public highway the court held: "The policy of the state in regard to exempting the sovereignty from the operation of statutes of limitations has been construed by the supreme court to have been limited in those statutes to lands, and that personal actions in favor of the state were subject to be barred by lapse of time," citing State v. Purcell, supra; Governor v. Allbright, 21 Tex. 753 and Governor v. Burnett, 27 Tex. 32, 33.

In 1924 the Waco intermediate appellate court in McKenzie v. Hill County, Tex.Civ. App., 263 S.W. 1073, 1074 (writ ref.) held:

*"There is no authority that we have been able to find which holds that limitation will not run against the county for the recovery of money which goes into its general fund.* We do not think it would be a proper construction to place on our statutes which would authorize or permit the county to sue its citizens on promiscuous claims years after the cause of action, if any, accrued. The same reasons apply why this should not be permitted as are applicable between individuals. The evidence with reference to payments and defenses might be destroyed or witnesses might die, and individual citizens would then be liable to harrassment by lawsuits long after the proof of payment or proof of the unjustness of the claim had been lost." (Emphasis added).

The Commission of Appeals, Section B, in 1931 in Linz v. Eastland County, Tex. Com.App., 39 S.W.2d 599, where the county had sued a bank closed for liquidation, the Commissioner of Insurance and Banking, and the Special Agent of the Commissioner to establish as a general deposit certain of its funds and have them classified as claims entitled to be paid out of the depositor's guaranty fund, a plea of limitation was urged against the county. The court after stating that the county urged as a reply to such limitations pleas that the statute does not operate against a county when acting in a governmental capacity (and the funds sued for were held and disbursable only in such capacity) because the statutes of limitations do not apply to the state or its governmental agencies then held:

"It is the opinion of the members of the Supreme Court, on the authority of Bitter v. Bexar County (Tex.Com.App.) 11 S.W.(2d) 163; Harris County v. Charlton, 112 Tex. 19, 243 S.W. 460, 245 S.W. 644; and Houston & T. C. Ry. Co. v. Travis County, 62 Tex. [16] 18, that the statutes of limitations are available as against the county's claim in *so far as applicable to the county's general fund.*" (Emphasis added).

We admit we have found some difficulty in reconciling the holdings of the respective

2. State v. Purcell, 16 Tex. 305.

courts above cited and quoted from with Coleman v. Thurmond, 56 Tex. 514; Brown v. Sneed, 77 Tex. 471, 14 S.W. 248; and some of the statements in Delta County v. Blackburn, 100 Tex. 51, 93 S.W. 419, though we find no difficulty in distinguishing the actual holdings in the latter case with the cases heretofore cited.

In the last cited case a distinction may be found in that the suit involved school lands, and Sec. 6, Art. 7, Constitution of Texas, Vernon's Ann.St., provides that counties hold their school lands and the proceeds thereof in trust for the public schools therein; the schools are institutions of the state, established in the counties as a part of the state's governmental policy, maintained in part from taxes and other funds directly furnished by the state, so no limitations shall ever be available against the title of any county.

In Coleman v. Thurmond, title to land was involved, and the Supreme Court of Texas in State v. Purcell, supra, had previously held in actions brought by the state, other than those for land, the statute of limitation will form a bar to the action.

Brown v. Sneed did not involve a suit against the county or one of its former officers but by intervention of the state a suit involving that sovereignty. In any event, the Supreme Court of Texas in Hatcher v. State, 125 Tex. 84, 81 S.W.2d 499, 98 A.L.R. 1213 has held:

"It is to be noted in this connection that, notwithstanding the fact that counties, as held in Bexar County v. Linden, [110 Tex. 339, 220 S.W. 763], supra, are essentially instrumentalities of the state, used 'as efficient and convenient means for the discharge of the State's duty in their regard to all the people,' the general limitation statutes are with certain defined exceptions available in defense of suits by counties."

Among the authorities cited in support of the statement just quoted are Houston & T. C. Ry. Co. v. Travis County, 62 Tex. 16; McKenzie v. Hill County, 263 S.W. 1073 (writ ref.); and Linz v. Eastland County, 39 S.W.2d 599, all of which we have previously cited and from all of which we have quoted.

█ In our case the jeeps were not used for any material purpose and certainly not for a part of the state's governmental policy for all the people. Additionally, any money recovered would, by the process of elimination of the other statutory funds, go into the general fund. McKenzie v. Hill County, supra, and Linz v. Eastland County, supra, both hold that limitation will run against the county for recovery of money which goes into the general fund. We, therefore, hold that appellant's contention that no limitation would ever run as to the cause of action for conversion asserted is not well taken.

Since we have held that limitation does run against the cause of action asserted, we now turn to the question of whether the two-year statute of limitation, Article 5526, or the four-year statute of limitation, Article 5527, is applicable.

"Texas decisions are unique in that both the primary contractual obligation view, * * * and the collateral security view, * * * are adhered to, the determination of which view controls in a particular case being dependent upon the wording of the official bond involved." 18 A.L.R.2d, Sec. 7, p. 1199.

Whatever cause of action appellant has grows out of the former sheriff's official bond. That bond provided he would faithfully perform and discharge all the duties required of him by law as sheriff of Hemphill County (not as director of the Civil Defense unit of the county). It also provided it would pay to the persons authorized by law to receive same all fines, forfeitures, etc., that he shall truly execute and make due return of all process and precepts to him lawfully directed, and pay over all sums of money collected by him by virtue of such process or precepts, shall faithfully

perform all such duties as may be required of him by law, and shall pay to his county all monies illegally paid to him out of county funds. The clause "shall faithfully perform all such duties as may be required of him by law" obviously refers to the faithful performance of all such duties as sheriff.

It is readily observable that the conditions of such bond did not provide for an obligation to anyone other than for the failure of the principal in connection with his duties as sheriff, nor did the company which executed it contract to bind itself for any misconduct, malfeasance or misfeasance as director of some ancillary organization. Additionally, the bond covered the period only while he was sheriff of Hemphill County, and it is without contradiction that any act of conversion of the jeeps took place several months after he had resigned as sheriff and was serving as postmaster of Canadian. Appellant's pleadings so assert.

■ An excellent discussion is made of the primary contractual obligation view and the collateral security view in 18 A.L.R.2d, Sec. 7, p. 1199, citing Hatcher v. State, 125 Tex. 84, 81 S.W.2d 499, 98 A.L.R. 1213; Cowart v. Russell, 135 Tex. 562, 144 S.W.2d 249 and many other cases. In both of the cases just cited the Supreme Court of Texas held the two-year statute of limitation applies and in Cowart v. Russell the court distinguished McKinney v. Robinson, 84 Tex. 489, 19 S.W. 699 and Throckmorton County v. Thompson, 131 Tex. 543, 115 S.W. 2d 1102, which had applied the four-year statute of limitation. Therefore, the bond being conditioned only for the faithful performance of official duties of the sheriff, during his service as sheriff, applicable to the obligations created by statute, the collateral security view applies and is covered by the two-year limitation period.

■ Article 6003a, Vernon's Ann.Tex. Civ.St., cited by appellant does not in our opinion furnish any aid to its contentions. Even though it provides that in suits on

account of the defalcation of, or misapplication, or misappropriation of money by any public officer of the state, and that for all purposes of limitation such suits on official bonds shall be considered and treated as acts of debt founded upon a contract in writing and covered by the four-year statute of limitation, it also provides only for the period covered by such bonds. That period was during the time Mr. Rathjen was serving as sheriff, while any conversion, under the record here, was more than four months after he had resigned as sheriff.

We hold the general limitation statutes are available to appellees and that the two-year statute of limitations for conversion applies, which period had already run at the time the suit was originally filed.

Accordingly, the judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING

Appellant's points are based on the error in the court's judgment for defendants on the ground that the statutes of limitation were applicable to plaintiffs' cause of action; in refusing to grant its summary judgment; on reversible error in abuse of discretion of the trial court in placing the county judge on the witness stand; and that the county attorney filed the suit upon his own motion without the consent or authority of the Commissioners of Hemphill County.

It is obvious that the limitation questions determined the law suit and those are the questions to which we devoted our considerable research and energies. We assumed without holding that the county attorney had the authority to file the suit on behalf of the county. Otherwise, the case would have been disposed of on those grounds. Additionally, the testimony of the county judge was not decisive of the limitation questions. Therefore, it is unnecessary to pass on whether the trial court abused its discretion in placing the witness on the stand.

We do not consider our opinion conflicts with the Eastland Court of Civil Appeals in Hemphill County v. Adams, Tex.Civ.App., 390 S.W.2d 546 (N.W.H.). That court was passing on summary judgment components alone and the county attorney's affidavit denied everything alleged and every defense pleaded by the defendants therein. The Eastland court simply held such affidavit raised questions of fact.

If we are correct in our interpretations of the cases cited in our original opinion on the limitation questions and the extent of the bonds obligations of the surety company defendant, it would be simply supererogate to write further. We believe we are correct and the motion for rehearing is overruled.